UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMMY Q. GILMORE,

    Plaintiff,

v.                                    CASE NO.: 8:11-cv-1454-T-23-TGW

NATIONAL MAIL HANDLERS UNION and
NATIONAL POSTAL MAIL HANDLERS
UNION,

    Defendants.
_____/

# **ORDER**

Proceeding pro se, Tammy Q. Gilmore sues (Doc. 1) the National Postal Mail Handlers Union ("National Union") and the National Postal Mail Handlers Union Local 318 ("Local Union") for violating Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981. The National Union and the Local Union move (Docs. 10, 17) separately to dismiss, and Gilmore responds. (Docs. 13, 23)

According to Gilmore's Equal Employment Opportunity Commission ("EEOC") charge,[*] the United States Postal Service ("USPS") hired Gilmore as a mail handler in April, 2006. (Doc. 10, Ex. 1) After Gilmore was absent from work for two months in the summer of 2008 and for a week in October, 2008, the USPS terminated Gilmore on October 6, 2008. Gilmore contends that a supervisor approved both absences. Ten

---

[*] The Local Union submits the EEOC charge, which Gilmore fails to include with the complaint. The EEOC charge, central to Gilmore's action and not in dispute, is subject to consideration with the Unions' motions to dismiss. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). The factual background includes also details from documents attached to the complaint and from Gilmore's responses to the motions to dismiss.

days after the termination, Gilmore asked the Local Union to submit a grievance with the USPS. Citing the untimeliness of Gilmore's request, the Local Union refused to act. (The parties fail to explain why Gilmore's request was untimely. Gilmore mentions a "14 day time limit" (Doc. 13 at 2), which apparently commences when an employee learns of a grievance. (Doc. 17, Ex. 2, Art. 15.2)) Gilmore contacted the National Union, which referred Gilmore back to the Local Union.

After the unions declined to help, Gilmore, who is black and female, completed an EEOC charge against the Local Union. The EEOC charge alleges discrimination on the basis of race and sex arising from Gilmore's termination without union representation. An EEOC "letter of determination" notes that the Local Union assisted a white male "beyond the 14 Day Time Limit" and for that reason concludes that the Local Union used the time limit as a pretext to discriminate against Gilmore. (Doc. 1, Ex. 1)

Although Gilmore's claims are almost entirely conclusory, a pro se plaintiff's complaint enjoys a lenient construction. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Erickson v. Pardus, 551 U.S. 89, 94 (2007). On the other hand, in each count Gilmore must state a distinct claim for relief. GJR Inv., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) ("a court [lacks] license to serve as a de facto counsel for a [pro se] party"), overruled on other grounds, Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); Giles v. Wal-Mart Distrib. Ctr., 359 Fed.Appx. 91, 93 (11th Cir. 2009).

The National Union argues that the complaint alleges no actionable act or omission by the National Union, that the National Union retains too little control over the Local Union to bear vicarious liability, and that the National Union never "authorized,

participated in, or ratified" an illicit act alleged in the complaint. The complaint directs each allegation at "the defendants," yet context suggests that each allegation applies to the Local Union only. Undoubtedly, the complaint is deficient as to the National Union, and each count against the National Union is due for dismissal – though not necessarily with prejudice.

The National Union "can be held [vicariously] liable for a discriminatory practice if it has a 'sufficient connection' with the discriminatory practice." Howard v. Int'l Molders and Allied Workers Union, AFL-CIO-CLC, 779 F.2d 1546, 1548 (11th Cir. 1986); but see Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1428 (D.C. Cir. 1988) ("We do not believe [] that the 'sufficient connection' test . . . supports a less stringent standard of vicarious liability under Title VII and section 1981 than the common-law agency standard that . . . is applicable in other contexts"). The National Union seeks distance from the Local Union by citing the unions' national and local constitutions, but "[i]n many situations [] an international's constitution will paint a misleading picture of the actual relationship it has with its locals. A local that is nominally semi-autonomous may actually be subservient." Berger, 843 F.2d at 1431. Gilmore will receive an opportunity to allege a basis for liability, including that the National Union exercises sufficient control over the Local Union to create an agency.

Against the Local Union the complaint asserts race discrimination, sex discrimination, unfair labor practices, retaliation, breach of contract, and conspiracy to unlawfully discriminate.

Gilmore adequately alleges race and sex discrimination against the Local Union because "[a] union which intentionally avoids asserting discrimination claims . . . is liable

under both Title VII and [Section 1981]," Goodman v. Lukens Steel Co., 482 U.S. 656, 667-69 (1987), superseded by statute on other grounds, 28 U.S.C. § 1658, and Gilmore alleges that the Local Union deliberately failed to challenge the USPS's discriminatory termination of Gilmore.  See Maegdlin v. Int'l Ass'n of Machinists and Aerospace Workers, Dist. 949, 309 F.3d 1051, 1053 (8th Cir. 2002); Marquart v. Lodge 837, Intern. Ass'n of Machinists and Aerospace Workers, 26 F.3d 842, 853 (8th Cir. 1994); Woods v. Graphic Commc'ns, 925 F.2d 1195, 1200, 1203 (9th Cir. 1991).  The Local Union seeks to strike from the discrimination counts an assertion that the Local Union lied to the EEOC.  Gilmore's conclusory assertion that the Local Union lied does not contribute to the survival of the discrimination counts, see Standard v. A.B.E.L. Serv. Inc., 161 F.3d 1318, 1332 (11th Cir. 1998), but the Local Union fails to establish that the accusation of lying is scandalous or impertinent to a degree that warrants erasure from the complaint.

Under the "unfair labor practices" claim, Gilmore writes that discrimination in violation of Title VII occurred, "which discrimination is an unfair labor practice."  In response to the Local Union's motion to dismiss, Gilmore clarifies that this count invokes Section 1981 and arises from the unions' failure to represent Gilmore.  (Doc. 13 at 2)  Gilmore's claim for "unfair labor practices" repeats the claims for discrimination and adds nothing to the complaint.

The retaliation claim stands on a lone assertion that after Gilmore completed the EEOC charge the Local Union again refused to challenge Gilmore's termination.  The assertion of a post-EEOC charge request for representation includes no supporting facts or details, and, besides the claim for retaliation, the assertion appears nowhere in

the material Gilmore submits.  In short, the assertion looks "slipped in" as support for an additional Title VII claim.  Retaliation requires that the employer inflict an adverse employment action on the employee because of the employee's protected activity. Dixon v. The Hallmark Companie, Inc., 627 F.3d 849, 856 (11th Cir. 2010).  Gilmore fails to explain how the Local Union's inaction after Gilmore completed the EEOC charge is "retaliation" rather than a continuation of the original offending behavior; that is, the complaint fails plausibly to allege that the Local Union's later refusal of representation occurred because Gilmore completed an EEOC charge rather than because the reasons for the earlier refusal of representation remained.

The fifth count, for breach of contract, asserts that the Local Union violated a provision of the collective bargaining agreement with the USPS that states, "there shall be no discrimination by the Employers or the Union against employees."  (Doc. 1, Ex. C) The National Union assumes that Gilmore invokes 39 U.S.C. § 1208(b), which governs the violation of a contract between the USPS and a labor organization, and the Local Union assumes that Gilmore invokes 29 U.S.C. § 185, which governs the breach of a collective bargaining agreement.  See Coppage v. U.S. Postal Serv., 281 F.3d 1200, 1204 (11th Cir. 2002).  Under either statute the pertinent limitation barred the claim before Gilmore sued, but Gilmore protests that both unions select the wrong law and that the breach of contract count stands on Section 1981.  However, nothing in the complaint evinces Gilmore's election of a claim under one statute or the other.  As a pro se plaintiff, Gilmore is entitled to a lenient pleading standard, but as defendants, the unions are entitled to fair notice of the basis of each claim.  The count for breach of contract is too vague to convey fair notice.  An amendment should state a discernable

claim and should explain how Gilmore can sue the unions directly (outside 39 U.S.C. § 1208(b) or 29 U.S.C. § 185) for breach of the discrimination ban in the collective bargaining agreement. See United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 374 (1990) ("we [] think it necessary to emphasize caution, lest the courts be precipitate in their efforts to find unions contractually bound to employees by collective-bargaining agreements"); Hendricks v. Airline Pilots Ass'n Intern., 696 F.2d 673, 676 (9th Cir. 1983).

Finally, Gilmore alleges a "conspiracy to unlawfully discriminate." In support of this claim, the complaint states that both the Local Union and the USPS submitted false evidence to the EEOC. The National Union correctly notes that Gilmore's words suggest a claim for conspiracy to deprive an individual of the equal protection of the laws under 42 U.S.C. § 1985(3). A conspiracy to violate a right protected by Title VII or by Section 1981 cannot sustain a claim under Section 1985(3). Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010). Gilmore complains that the "choice of the word 'conspiracy' is being misconstrued." (Doc. 13 at 4) Again Gilmore cites her pro se status as cause to preserve or to dismiss without prejudice an invalid claim, but another attempt to formulate a successful count for conspiracy to discriminate (at least one not duplicative of the claims for race and sex discrimination) appears futile.

The motions (Docs. 10, 17) to dismiss are **GRANTED IN PART** and **DENIED IN PART**. Counts I, II, IV, and V against the National Union and Counts IV and V against the Local Union are **DISMISSED WITHOUT PREJUDICE**. Counts III and VI against the National Union and Counts III and VI against the Local Union are **DISMISSED WITH**

**PREJUDICE**. Counts I and II against the Local Union remain.  Gilmore may submit an amended complaint by **October 10, 2011**.  In an amended complaint, Gilmore must differentiate between the actions of the Local Union and the National Union (that is, few or no references to "the defendants" collectively), and, in accord with Local Rule 1.05(a), Gilmore must double-space.  Gilmore's motion (Doc. 23) to strike portions of the National Union's response and the National Union's request (Doc. 25) to submit a reply are **DENIED**.

ORDERED in Tampa, Florida, on September 27, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE