UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMMY Q. GILMORE,

    Plaintiff,

v.                                            CASE NO. 8:11-cv-1454-T-23TGW

NATIONAL POSTAL MAIL
HANDLERS UNION and NATIONAL
POSTAL MAIL HANDLERS UNION
LOCAL 318,

    Defendants.
_____/

**ORDER**

After the National Postal Mail Handlers Union (National Union) and the National Postal Mail Handlers Union Local 318 (Local Union) refused to grieve Tammy Gilmore's termination from the United States Postal Service (USPS), Gilmore sued (Doc. 53) the unions for gender and race discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1981. The National Union and the Local Union each move (Docs. 65, 66) for summary judgment, and Gilmore responds (Docs. 75, 77).

Gilmore began her employment with the USPS in April, 2006. In May, 2008, the USPS issued a letter of warning to Gilmore for her absence without leave

(AWOL) on March 15, 2008. With the approval of her supervisor, Gilmore missed work under the Family Medical Leave Act (FMLA) for most of May and June, 2008. From July 5, 2008, Gilmore began to request leave for a personal emergency, for which the USPS requires documentation. (Doc. 77-1) Gilmore provided the USPS with no documentation to demonstrate a personal emergency. On July 30, 2008, USPS management attempted to interview Gilmore to confirm her personal emergency. Because she had re-located to Atlanta, Gilmore requested that the interview occur by telephone. USPS management agreed, but Gilmore neither answered her telephone at the scheduled time nor returned USPS management's voicemail messages. As a result of Gilmore's undocumented leave, the USPS suspended Gilmore for seven days and sent her a suspension letter on August 5, 2008, by certified mail. Gilmore never signed for the letter, which was returned to the USPS.

Gilmore's continued undocumented absence from work caused the USPS to declare Gilmore "AWOL" on August 17, 2008. On August 24, 2008, the USPS sent Gilmore a certified letter requesting her attendance at a September 2 interview about Gilmore's continued absence. Gilmore failed to attend. On September 3, the USPS terminated Gilmore effective October 6. The USPS mailed a removal letter to Gilmore on September 4. The certified letter arrived at Gilmore's home on September 5, but the USPS returned the letter (marked 'unclaimed') to the USPS on September 19.

Under the collective bargaining agreement between each union and the USPS, Gilmore could grieve both her seven-day suspension and her termination, provided she began the grievance within fourteen days of when she learned or should have learned of each disciplinary measure. Both the suspension letter and the removal letter stated the right to a grievance. Gilmore learned of her removal on either October 12 or 16, 2008, a week after her termination became effective and five weeks after the removal letter arrived at Gilmore's home. Requesting assistance, Gilmore contacted the Local Union on October 16 and the National Union on November 3. Each union declined to grieve Gilmore's termination. The Local Union believed the grievance was untimely. The National Union referred Gilmore to the Local Union.

A Section 1981 discrimination claim requires that the plaintiff belong to a racial minority, that the defendant intend to discriminate on the basis of race, and that the discrimination involve an act protected by Section 1981. *Cook v. Randolph Cnty., Ga.*, 573 F.3d 1143, 1157 (11th Cir. 2009). A similar analysis governs Gilmore's Title VII gender discrimination claim. *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). An African-American female, Gilmore alleges that each union discriminated by refusing to grieve her termination and by thus interfering with the right protected by Section 1981(a) "to make and enforce a contract."

A collective bargaining agreement and the implied duty of fair representation fix a union's entire contractual duty to a member. *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944). Therefore, a prima facie case of discrimination by a union

under Section 1981 requires a showing that (1) the employer violated the collective bargaining agreement, (2) the union failed to challenge the violation in breach of the duty of fair representation, and (3) the union acted with discriminatory animus. *York v. American Tel. & Telegraph Co.*, 95 F.3d 948, 955-56 (10th Cir. 1996); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 868 (7th Cir.1985).

Under the collective bargaining agreement, the National Union owes no duty to represent an individual member in a local grievance. The National Union advocates on behalf of an individual member only if the grievance involves "an interpretive issue under [the collective bargaining] Agreement . . . [that] may be of general application." (Doc. 66) Although she must produce evidence of a breach of the National Union's duty, Gilmore provides no evidence that the National Union grieves an individual's complaint under a circumstance similar to hers. In an attempt to meet the burden of production Gilmore presents three examples of the National Union's representing an individual, but each example fails to show National Union representation of an individual. Gilmore cites (Docs. 75-4, 75-8) two purely local grievances, with no involvement by the National Union. Finally, Gilmore cites (Doc. 75-21) an instance in which the National Union joined a local union's ongoing grievance to interpret a procedural requirement under the collective bargaining agreement. The National Union joined the arbitration to benefit union members nationwide. Gilmore's proffered evidence includes no instance of the National Union's representing an individual grievant. In the absence of evidence of disparate

treatment, breach of the duty of fair representation, or discriminatory motive, Gilmore's claims against the National Union must fail.

The Local Union addresses a member's local complaint. Gilmore, however, presents no evidence that the USPS violated the collective bargaining agreement. Gilmore missed work for more than three months, failed to challenge her seven-day suspension, and ignored management requests to document her personal emergency. Gilmore claims that her firing failed to conform to USPS procedure but cites no procedural requirement that the USPS violated. Also, Gilmore claims that she won her Equal Employment Opportunity Commission (EEOC) discrimination charge against the USPS, but five days before Gilmore's claim of success the EEOC affirmed the administrative dismissal of her charge.

Even if the USPS violated the collective bargaining agreement, the Local Union's inaction might not constitute a breach of the duty of fair representation because a union enjoys broad discretion in grieving a member's complaint. *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982). Gilmore must present evidence that the Local Union arbitrarily, in bad faith, or with a discriminatory motive failed to grieve her complaint. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

Gilmore presents no direct evidence of discrimination; therefore the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) burden-shifting standard applies to her claims. First, Gilmore must establish a prima facie case of discrimination. Next, the burden shifts to the Local Union to provide a legitimate,

non-discriminatory reason for its treatment of Gilmore. Finally, Gilmore must establish that the Local Union asserts the non-discriminatory reason as a mere pretext.

To support her claim that the Local Union acted with discriminatory animus, Gilmore establishes that the Local Union began an untimely grievance on behalf of Eric Reimer, a white male employee whom the USPS terminated for absenteeism. The Local Union represented Reimer from December, 2007, through late 2008, when Gilmore requested representation. The Local Union dropped Reimer's regional-level arbitration appeal in December, 2008. The Local Union contends that a mid-level official erroneously grieved Reimer's complaint, but the duration of the Local Union's representation permits another inference.

Despite the existence of a white male who received better treatment in a similar circumstance, Gilmore fails to establish a triable issue of fact on any element of the prima facie case. The USPS enjoys the right under the collective bargaining agreement to discipline a mail handler for missing work and for failing to report a change of address. The Local Union enjoys the right under labor law to exercise discretion in grieving a member's termination. Evidence of only one comparator – without more evidence – fails to raise independently an inference of discriminatory animus and permits only speculation. *See Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (holding that, in the context of an employment discrimination claim, a prima facie case requires evidence refuting the most common

non-discriminatory explanations); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 646 (3d Cir.1998) ("this is not to say that more favorable treatment of a single member of a non-protected group is never relevant, but rather that the evidence cannot be viewed in a vacuum").

Even if Gilmore establishes a prima facie case of discrimination, the Local Union offers legitimate, non-discriminatory reasons for the disparate treatment. The Local Union says that it refused to grieve Gilmore's complaint due to untimeliness. Gilmore's complaint became untimely in mid-September, fourteen days after the removal letter arrived at Gilmore's home. Also, in September, 2008, the regional director of the National Union explicitly refused to grieve Reimer's complaint due to untimeliness. By October 16, 2008, when Gilmore asked the Local Union to grieve her termination, arbitrators had denied Reimer's grievance as untimely at three separate hearings. The series of denials could understandably render the Local Union averse to processing an untimely grievance. The Local Union proffers a legitimate, non-discriminatory explanation for its refusal to grieve Gilmore's termination. The Local Union chose not to grieve Gilmore's complaint not because of Gilmore's race or gender but because the grievance would fail.

The burden shifts to Gilmore to show that the Local Union's explanation amounts to a mere pretext. Failing to meet her burden under *McDonnell Douglas*, Gilmore offers no evidence that the Local Union proffers untimeliness as a pretext for discriminatory treatment on the basis of race or gender. The facts offered by

Gilmore to support her discrimination claims against the Local Union reveal no breach of the duty of fair representation, no discriminatory animus, and no showing of discrimination under *McDonnell Douglas*.

Gilmore raises assorted assertions in her third amended complaint and in her responses. However, Gilmore supports her conclusory allegations by reliance on exhibits that disprove her assertions. For example, Gilmore alleges collusion between USPS management and the Local Union. In support, she cites a certificate of marriage between a union steward and a USPS manager (Doc. 77-12). Also, Gilmore alleges that the Tampa district of the USPS directed Gilmore to contact the Atlanta district of the USPS, "while they deceitfully removed Gilmore[,] who maintained contact with the Atlanta District." In support, Gilmore cites e-mails between Gilmore and a USPS official in Orlando. The "cc" line of the e-mails show a copy to a USPS official in Atlanta (Doc. 77-16). The fact that the e-mails originated on October 21, 2008, fifteen days after Gilmore's termination became effective and at least five days after Gilmore learned of her termination, impairs Gilmore's credibility and undermines her claim. In sum, Gilmore sues for discrimination based on one item of circumstantial evidence amid a series of unsubstantiated and meritless assertions.

Gilmore moves to strike the Local Union's inclusion of the EEOC result as supplemental authority, but Gilmore cited the EEOC complaint in her response (Doc. 75-7). The motion (Doc. 108) to strike is **DENIED**. The defendants' motions

(Docs. 65, 66) for summary judgment are **GRANTED**.  The clerk is directed to (1) enter a judgment accordingly, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on July 2, 2012.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE